UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CARLA O'NEAL,

        Plaintiff,

vs.                                   Case No.  3:08-cv-63-J-MCR

MICHAEL J. ASTRUE, Commissioner of
Social Security,

        Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security Benefits for the time period from May 1, 2003.  The Court has thoroughly reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and the matter **REMANDED** for proceedings not inconsistent with this opinion.

## I.    PROCEDURAL HISTORY

Plaintiff filed a claim for Disability Insurance and Supplemental Security Income payments on January 13, 2006.  Her claim was denied through two administrative reviews and on April 18, 2007, a hearing was held before an Administrative Law Judge ("ALJ").  (Tr. 18-61).   On June 27, 2007, the ALJ issued a decision finding claimant was

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.

not disabled.  (Tr. 9-17).  The Appeals Council denied Plaintiff's request for review, and on January 17, 2008, Plaintiff timely filed a complaint in this Court.

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff alleges disability as of May 1, 2003 due to pain in her neck, back, and legs.  (Tr. 168-175).

### B.    Summary of Evidence Before the ALJ

Plaintiff was 42 years old at the time of the ALJ's decision.  Plaintiff graduated from high school and had past relevant work experience as a bartender, a waitress, an accounting clerk, a child monitor, and a house worker.  (Tr. 15).  On September 30, 2004, Plaintiff presented to Dr. Nabizadeh with complaints of low back pain, tingling in her left arm, numbness and tingling in her left lower extremity, and aggravation of her left shoulder.  (Tr. 251).  Dr. Nabizadeh diagnosed Plaintiff with degenerative disc disease and chronic myofacial pain.  Id.  The doctor ordered MRIs of Plaintiff's cervical and lumbar spine, and placed her on Prednisone taper.  Id.  Dr. Nabizadeh's notes indicate he also prescribed Oxycontin, Xanax, Robaxin, Lorcet, and Methadone, throughout the course of Plaintiff's treatment.  Additionally, Dr. Nabizadeh's treatment notes reflect Plaintiff's on-going complaints of low back pain, neck pain, headaches, pain behind her eyes, and pain in her left arm and leg.  (Tr. 242-251).  On July 18, 2006, Dr. Nabizadeh completed a Physical Residual Functioning Capacity Questionnaire.  (Tr. 301-305).  Dr. Nabizadeh reported the side effects of Plaintiff's medication, such as dizziness, fatigue, and lethargy, were likely to affect Plaintiff's ability to work.  (Tr. 301).

He opined Plaintiff would often have pain and symptoms severe enough to interfere with her attention and concentration, and as such, Dr. Nabizadeh reported Plaintiff would not be able to tolerate work stress to any degree. (Tr. 302). Dr. Nabizadeh opined Plaintiff could only sit 1 hour before needing to get up, stand 30 minutes before needing to sit down, sit 4 hours in an 8-hour day, and stand/walk less than 2 hours in an 8-hour day. (Tr. 303). Dr. Nabizadeh also indicated Plaintiff would need to take an indefinite number of unscheduled breaks during an 8-hour working shift, and that each break would need to be, on average, between 20-30 minutes. (Tr. 303). Dr. Nabizadeh opined Plaintiff would need to lie down 2-3 hours every day, and would likely be absent from work more than four days per month. (Tr. 303-305). Dr. Nabizadeh reported Plaintiff could occasionally lift less than 10 pounds, rarely lift 10 lbs, and never lift more than 20 lbs. (Tr. 304). As for postural limitations, Dr. Nabizadeh reported Plaintiff was unable to crouch or climb ladders, rarely able to twist or stoop, and occasionally able to climb stairs. (Tr. 304). Dr. Nabizadeh saw Plaintiff a few times in 2006 and on January 19, 2007, Plaintiff tested positive for Oxycodone, Opiates, and Cocaine Metabolite. (Tr. 329). Plaintiff was discharged from Dr. Nabizadeh's care on the same day. (Tr. 330).

Baptist Medical Center records dated March 3, 2003, May 10, 2004, and May 17, 2004, show Plaintiff received epidural steroid injections for left L5 radicular pain syndrome, left S1 pain, and degenerative disc disease. (Tr. 217-225). On November 8, 2004, MRIs of Plaintiff's cervical spine and lumbar spine were performed at Riverside Imaging Center. (Tr. 237). The cervical spine MRI revealed a broad based C3-4 left paracentral disc protrusion not significantly effacing the thecal sac or definitely abutting

the nerve root.  Id.  It also showed right C6-7 uncinate hyperthrophy resulting in mild

degree of central neural foraminal narrowing with a small central discosteophyte

complex at C6-7 abutting the ventral aspect of the cord and mild effacement of the

dorsal thecal sac.  Id.  The MRI of Plaintiff's Lumbar spine showed small left foraminal

annular tear without evidence of disc herniation, canal stenosis, or neural foraminal

narrowing at any level.  (Tr. 239).  A lumbar spine MRI performed on January 26, 2004,

revealed a tiny broad based disc bulge and central disc protrusion at L4-5 and L5-S1.

(Tr. 240).  Plaintiff was seen at Baptist Primary Care on various occasions between

June 4, 2004 and January 26, 2006.  The treatment records indicate abnormalities in

Plaintiff's left lower extremities and in her spine (Tr. 256, 256), swelling and soreness in

her legs and feet (Tr. 255, 258, 260-64), and chronic pain in her neck and lower back.

(Tr. 255).

Dr. William Choisser completed a consultative examination report on April 18,

2006, in which he opined Plaintiff had lumbar pain and cervical pain due to degenerative

disc disease.  (Tr. 275).  He found Plaintiff had mild to moderate spasm along the

cervical spine and decreased ROM of the same.  (Tr. 275).  He also noted Plaintiff had

"quite a bit of pain" getting on and off the examination table, secondary to her back

problems.  Id.  Dr. Choisser observed heel to toe walking was impossible for Plaintiff

due to pain.  Id.  While Dr. Choisser reported Plaintiff's lumbar spine ROM was within

normal limits, he noted mild to moderate paravertebral muscle spasm along the same.

Id. Dr. Choisser opined there was nerve impingement theoretically along Plaintiff's left

lower leg.  Id.

Non-examining physicians employed by the Social Security Administration, Drs. Attlesey and Bancks, performed Physical RFC Assessments based on their review of Plaintiff's medical records. Dr. Attlesey completed her report on April 25, 2006. (Tr. 286). Based on the objective medical findings, Dr. Attlesey opined Plaintiff could occasionally lift and/or carry 20 lbs, frequently lift and/or carry 10 lbs, stand and/or walk (with normal breaks) about 6 hours in an 8-hour workday, sit (with normal breaks) about 6 hours in an 8-hour workday. (Tr. 280). Dr. Attlesey opined Plaintiff's ability to push and/or pull was unlimited and Plaintiff had no visual, communicative, or manipulative limitations. (Tr. 282). Dr. Attlesey determined Plaintiff was not able to balance, but could occasionally climb, stoop, kneel, crouch, and crawl. (Tr. 281-282). Dr. Bancks completed his assessment on August 7, 2006. (Tr. 327). Dr. Bancks opinion about Plaintiff's exertional limitations was identical to that of Dr. Attlesey except that in terms of postural limitations, Dr. Bancks opined Plaintiff could frequently climb ramps/stairs, kneel, and crawl. Also, he determined Plaintiff could occasionally climb ladders/ropes/scaffolds, balance, stoop, and crouch. (Tr. 322).

At Plaintiff's administrative hearing, held on April 18, 2007, Plaintiff testified she was not able to work as a result of swelling in her feet and legs and the need to lie down every day for two to three hours. (Tr. 40). Plaintiff stated she received unemployment after leaving her job with Host in 2003. (Tr. 36). Plaintiff confirmed she worked a little bit in 2004 subsequent to her alleged date of onset of disability. Specifically, Plaintiff stated she cleaned her mother's house a few times, cleaned a friend's home a few times, babysat for two children during the summer, and worked three shifts at her

uncle's bar.  (Tr. 29-31).  Additionally, she testified she had to stop each job due to her pain.  (Tr. 29).

Plaintiff spoke of "throbbing pain" in her neck, bad headaches, burning that radiated down her left arm, and numbness in her left arm that occurred a couple of times per month.  (Tr. 44).  Plaintiff testified to various treatments used to help relieve her symptoms including steroid injections, cortisone shots, epidural injections, physical therapy, and prescription medication.  (Tr. 45).  Plaintiff stated her prescription medication eased her pain somewhat, but made her sleepy.  (Tr. 46).  When asked whether she used any other means to manage her condition, Plaintiff said she used heat and ice once in a while and that she used to sleep on her heating pad every night until it burned her badly.  (Tr. 53).  Plaintiff also noted she soaked in hot baths during the day sometimes.  (Tr. 53).

Plaintiff testified to having difficulty concentrating because of the pain.  (Tr. 40).  In terms of her daily activities, Plaintiff stated she performed the necessary household chores such as cleaning and "keeping things straight," but claimed she was "nothing like [she] used to be." (Tr. 47).  She noted her son was good at helping her keep the house picked up and would sometimes help her vacuum.  (Tr. 57).  Plaintiff stated she was able to drive and although she did some of her own groceries and errands, her mother also helped her by bringing things to her house.  (Tr. 51).  Finally, Plaintiff stated she went to church maybe once or twice per month but had no other social involvement.  (Tr. 51).

## C.    Summary of the ALJ's Decision

A claimant is entitled to disability benefits when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limits her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008.  (Tr. 11).  At step

one, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 1, 2003, the alleged onset date of disability. Id. However, the ALJ noted Plaintiff earned $4,064 in 2005 by cleaning her mother's house for several months, cleaning her friend's house for a few months, babysitting two children for about four months, and working 3 shifts at her uncle's bar. Id. The ALJ determined evidence of Plaintiff's earnings in 2005, while not constituting substantial gainful activity, was indicative of Plaintiff's activity level. Id. At step two, the ALJ determined Plaintiff had the following "severe" impairments within the meaning of the Regulations: degenerative disc disease of lumbar and cervical spine, chronic myofascial pain, and status post bilateral mastectomies. (Tr. 11). Plaintiff's adjustment disorder was deemed to be non-severe. Id. The ALJ determined none of Plaintiff's impairments, either singly or in combination, were "severe" enough to meet or medically equal, one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Tr. 13). The ALJ found Plaintiff retained the residual functional capacity for sedentary work. (Tr. 13-14).

In making her RFC determination, the ALJ determined the opinion of Plaintiff's treating physician, Dr. Nabizadeh, was not entitled to controlling weight. (Tr. 14). The ALJ found the evidence did not support Plaintiff's allegations of total disability because the MRI reports did not reveal "any significant fractures of herniations, and the claimant's medical treatment ha[d] been conservative in nature." (Tr. 13). Additionally, the ALJ determined Plaintiff's own testimony of her daily activities and the medical findings did not support the extent of the limitations reported by Dr. Nabizadeh. Id. In

addition, the ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely credible" because nothing in the evidence supported the alleged degree of Plaintiff's limitations. (Tr. 15). The ALJ used the fact that Plaintiff had applied for and received unemployment compensation during her period of alleged disability as support for his decision to discredit Plaintiff's testimony. Id.

At step four, the ALJ utilized the testimony of an impartial vocational expert ("VE") to identify the skill level of Plaintiff's past relevant work. (Tr. 15). Based on Plaintiff's residual functional capacity, the ALJ found Plaintiff was able to perform past relevant work as an accounting clerk. Id. Finally, considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found Plaintiff was not disabled as defined in the Social security Act.

## III.     STANDARDS OF LAW

### A.     The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v.

Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as the finder of fact, and even if the reviewer finds the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## IV.    ANALYSIS

Plaintiff essentially raises two issues on appeal. First, Plaintiff argues the ALJ failed to properly evaluate the findings and opinions of Plaintiff's treating physician, Dr. Nabizadeh. (Doc. 10, pp. 11-17). Plaintiff contends after discrediting Dr. Nabizadeh's opinion, the ALJ failed to perform the required evaluation of that opinion based on the factors listed in 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), (d)(3)-(6) and 404.1527(d)(2)(i)-(ii), (d)(3)-(6). (Doc. 10, p. 16). Second, Plaintiff argues the ALJ did not properly assess Plaintiff's testimony and credibility. (Doc. 10, pp. 17- 25). Plaintiff alleges the ALJ "failed to articulate explicit and adequate reasons for finding [Plaintiff's] testimony of disabling limitations not entirely credible." (Doc. 10, p. 17).

**A.** **The ALJ's evaluation of Dr. Nabizadeh's opinion**

The ALJ is required to give controlling weight to the opinion of a treating physician because a treating physician is one who is able to provide a detailed longitudinal picture of the claimant's impairment(s). 20 C.F.R. § 404.1527(d)(2). A treating physician's opinion must be given "substantial or considerable weight unless 'good cause' is shown to the contrary." Wright v. Barnhart, 153 Fed. Appx. 678, 684 (11th Cir. 2005)(citing Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997)). The Eleventh Circuit has found there is "good cause" to place less weight on the opinion of a treating physician where: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records. Id. Where an ALJ discounts or rejects a treating physician's opinion, she is required to articulate her reasons for doing so. Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004). An ALJ commits reversible error if she fails to articulate reasons for discounting a treating physician's opinion. See Lewis, 125 F.3d at 1440. Where an ALJ does not give a treating source's opinion controlling weight, the ALJ must still consider the following factors in determining the weight to give that opinion: the length, nature and extent of the treatment relationship, the frequency of examination, whether the opinion is supported by objective findings, whether the opinion is consistent with the record as a whole, and the specialization of the doctor. See 20 C.F.R. § 404.1527(d)(2)(i)-(ii), (d)(3)-(6)(2008).

In the instant case, the ALJ determined the opinion of Plaintiff's treating physician was not entitled to controlling weight because neither Plaintiff's daily activities, or the

"medical findings," supported the limitations Dr. Nabizadeh reported. (Doc. 10, p. 13). The ALJ found Dr. Nabizadeh's opinion that Plaintiff could only stand/walk less than 2 hours and sit less than 4 hours, in an 8 hour day, was contradicted by the fact that Plaintiff had cleaned houses, babysat, and worked in a bar less than a year before the date of the decision. (Tr. 13). Additionally, the ALJ noted State agency consultants found Plaintiff capable of light work. (Tr. 14).

Plaintiff argues the ALJ failed to establish "good cause" for not giving controlling weight to the opinion of her treating physician. Id. Plaintiff argues Dr. Nabizadeh's own "medical findings," as well as other medical findings in the record, support the treating physician's opinion. (Tr. 14-15). On the other hand, the Commissioner argues the ALJ's decision to discredit Dr. Nabizadeh's opinion is supported by substantial evidence because his opinion is not consistent with the medical and non-medical evidence. (Doc. 11 p. 10).

Dr. Nabizadeh completed a Treating Physician RFC Questionnaire on July 18, 2006. (Tr. 305). As a result of Plaintiff's impairments, Dr. Nabizadeh estimated Plaintiff's functional limitations, if placed in a competitive work situation, would be as follows: Plaintiff could only walk 2-3 blocks without rest or severe pain, sit no more than 1 hour before needing to get up etc., stand no more than 30 minutes at one time, stand/walk less than 2 hours in an 8-hour work day, and sit no more than 4 hours in an 8-hour work day with normal breaks. (Tr. 302-303). Plaintiff would have to walk every 45 minutes for about 5 minutes, take unscheduled breaks of 20-30 minutes each, elevate her legs to hip level, if sitting for a prolonged period. (Tr. 304). Also, Plaintiff

could occasionally lift less than 10 lbs., rarely lift 10 lbs., never lift more than 20 lbs., rarely twist and stoop, never crouch or climb ladders, and occasionally climb stairs. Tr. 304). Dr. Nabizadeh also determined Plaintiff would need to lie down and rest for 2-3 hours in an 8-hour period. (Tr. 305).

Dr. Nabizadeh opined Plaintiff's pain was often severe enough to interfere with her attention and concentration and he indicated Plaintiff would be unable to tolerate work stress to any degree. (Tr. 302). Dr. Nabizadeh also stated he did not believe Plaintiff was a malingerer. (Tr. 302). To support the limitations he reported, Dr. Nabizadeh referred to evidence of Plaintiff's decreased range of motion, muscle spasms, and the results of Plaintiff's MRIs. (Tr. 301).

Plaintiff's Lumbar Spine MRI revealed a small *left* foraminal annular tear. (Tr. 239). The MRI also showed mild circumferential disc bulge at L5-S1 and L4-5 without evidence of canal stenosis or neural foraminal narrowing, and a small area of linear signal abnormality in the *left* foramen. (Tr. 240). The Division of Disability Determination's Range of Motion Report Form dated April 18, 2006, showed range of motion decreased to 20 degrees for lateral rotation of the cervical spine, and range of motion decreased to 30 degrees for the *left* hip flexion. (Tr. 276-277). In addition to prescription medication such as Methadone, Lortab, Xanax, Lorcet, Robaxin, Oxycontin, and Prednisone, Plaintiff underwent epidural steroid injections and received cortisone shots in an attempt to alleviate her left L5 radicular pain syndrome, S1 pain, and degenerative disc disease. (Tr. 220-226, 244-252). The medical evidence also includes the results of a consultative examination performed by Dr. William Choisser on

-13-

April 18, 2006.  Dr. Choissier reported mild to moderate spasm along Plaintiff's cervical spine, mild to moderate paravertebral muscle spasm along her lumbar spine and decreased lateral rotation of the cervical spine to about 20 degrees.  (Tr. 275).  Dr. Choissier also indicated heel to toe walking was impossible for Plaintiff due to pain.  Id. Finally, Dr. Choissier noted Plaintiff had "quite a bit of pain" getting on and off the examination table and he found there was nerve impingement theoretically along the *left* lower leg.  Id.

Upon review of the record, the Court finds the objective medical findings all point to difficulties or abnormalities on Plaintiff's left side which would tend to support Dr. Nabizadeh's report.  The ALJ has failed to explain how Dr. Nabizadeh's opinion was unsupported by the objective medical evidence, was inconsistent with the doctor's own medical records, or in any way conclusory.  As such, the ALJ has not established good cause to discredit Dr. Nabizadeh's opinion.  Contrary to the Commissioner's argument, the Court finds Dr. Nabizadeh's opinion was not inconsistent with the objective medical findings.  In fact, it appears Dr. Choissier's report even bolsters the treating physician's opinion.

In support of his contention that the ALJ's decision was supported by substantial evidence, the Commissioner points to the fact that the reports of Drs. Attlesey and Banck were in conflict with that of Dr. Nabizadeh.  (Doc. 11, p. 7).  Generally, an ALJ should give more weight to the opinion of an examining physician than to the opinion of a non-examining physician.  20 C.F.R. § 416.927(d)(1); Adams v. Massanari, 55 Fed. Appx. 279, 284 (6th Cir. 2003)(noting the opinion of a non-examining physician is entitled

to little weight if it is contrary to opinion of treating physician).  The ALJ "may not reject the opinion of a treating physician, even if it is contradicted by the opinions of other doctors, without providing specific and legitimate reasons supported by substantial evidence in the record."  Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001).  Drs. Attlesey and Banck are state agency medical consultants who did not examine Plaintiff.  See 20 C.F.R. § 404.1502.  As such, their opinions were generally entitled to less weight than that of Dr. Nabizadeh.  Additionally, here, where the Commissioner argues the ALJ rejected Dr. Nabizadeh's opinion based in part on the fact that it was contradicted by the opinions of non-examining physicians, the Court finds the ALJ failed to provide specific and legitimate reasons for doing so, supported by substantial evidence in the record.

Finally, the Commissioner contends the non-medical evidence supports the ALJ's decision to discredit Dr. Nabizadeh's opinion.  The Commissioner argues Plaintiff's daily activities during her alleged period of disability do not support the limitations reported by Dr. Nabizadeh.  (Doc. 11 p. 10).  The Commissioner takes issue with the fact that Plaintiff performed an alleged "wide range of homemaking activities," in addition to working.  Id.  In opposition, Plaintiff argues her limitations and daily activities are consistent with Dr. Nabizadeh's opinion.  (Tr. 13-14).  Plaintiff contends the fact that she cleaned houses, babysat, and worked in a bar less than one year before the ALJ's decision, does not support the ALJ's decision to discredit Dr. Nabizadeh's opinion.  Plaintiff point out that in each instance, Plaintiff was forced to stop performing the jobs because of her impairments.  (Tr. 15).

The Court finds the fact that Plaintiff attempted to work during her alleged period of disability is not, by itself, a sufficient reason to discredit the limitations reported by her treating physician. First, activities engaged in at home are not necessarily transferable to the "more grueling environment of the workplace," where the claimant may not have the freedom to rest or take medication at will. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Additionally, occasional symptom free periods, and even sporadic ability to work, are not inconsistent with finding that a claimant suffers disability. Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995). Second, courts have "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Lingenfelter v. Astrue, 504 F.3d 1028, 1038 (9th Cir. 2007) (quoting Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)). In considering this issue, this Court finds it significant that the Social Security Administration ("SSA") actually provides for a recipient of disability benefits to work for nine months or less, without such work counting as evidence that the recipient is no longer disabled. See Id. at 1039. The SSA refers to such a period as a trial work period. See 20 C.F.R. § 404.1592.

In the instant case, the ALJ acknowledged Plaintiff's brief attempts to earn some money did not amount to "substantial gainful activity." (Tr. 11). Additionally, Plaintiff testified she cleaned her mother's house for a few months because her mother was helping her but that "[she] just wasn't able to do it." (Tr. 29). Plaintiff indicated she tried babysitting during the summer months but was unable to continue, even though the mother of the children asked her to stay on during school, because "[she] just couldn't handle it . . . it was too much for [her]." Id. Finally, Plaintiff testified she worked three

10-hour shifts in her uncle's bar but she wasn't able to be on her feet for that long. (Tr. 29-30). In terms of daily activities, Plaintiff testified to having to lie down two to three hours in a typical day. (Tr. 46). Plaintiff stated she vacuums once per week, does laundry once per week, and cooks three to four times per week. (Tr. 47-48). However, Plaintiff also testified her son helps her vacuum, cleans, and fixes himself microwave dinners when she is having a particularly bad day. (Tr. 46, 48).

Upon review, the Court concludes Plaintiff's testimony regarding her household activities was not inconsistent with Dr. Nabizadeh's opinion. Because each of Plaintiff's attempts to work lasted less than 9 months, the Court finds Plaintiff's attempts to work can be viewed like the trial work periods allowed by the SSA. See Parish v. Califano, 642 F.2d 188, 193 (6th Cir. 1981). Additionally, each attempt to work appears to have been terminated as the direct result of Plaintiff's impairments. As such, the Court finds these brief periods of work are not sufficient evidence to discredit Dr. Nabizadeh's opinion.

The Court finds the ALJ did not establish good cause for discrediting Dr. Nabizadeh's opinion. While the ALJ did articulate reasons for discrediting Dr. Nabizadeh's opinion, the Court finds substantial evidence does not support the ALJ's reasons. On remand, the ALJ should reconsider the opinion and limitations reported by Dr. Nabizadeh. If the ALJ finds the treating physician's opinion is contrary to the weight of the evidence, she should clearly articulate her reasons for discrediting Dr. Nabizadeh's opinion in light of the 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), (d)(3)-(6) and 404.1527(d)(2)(i)-(ii), (d)(3)-(6) factors.

**B.    The ALJ's evaluation of Plaintiff's testimony and credibility**

Pain is a non-exertional impairment.  Foote, 67 F.3d at 1559.  The ALJ must consider *all* of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528 (emphasis added).  In determining whether the medical signs and laboratory findings show medical impairments which could reasonably be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying
> medical condition and either (2) objective medical evidence
> that confirms the severity of the alleged pain arising from
> that condition or (3) that the objectively determined medical
> condition is of such a severity that it can be reasonably
> expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).

Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).  When an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991)(stated reasons must be based on substantial evidence); See also Moore v. Barnhart, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005)(holding precedent in the Eleventh Circuit requires "explicit articulation of the reasons justifying a decision to discredit a claimant's subjective pain testimony").  As a matter of law, the failure to

articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

In this case, the ALJ found Plaintiff's impairments could reasonably be expected to produce the symptoms alleged. However, the ALJ determined Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." (Tr. 15). The ALJ found there was *nothing* in the record to support the degree of Plaintiff's alleged limitations. Id. It appears the ALJ found Plaintiff not credible because despite her claim of disability due to back problems and swelling of her feet and legs, Plaintiff testified she took her son to school, cleaned her home, helped her son with homework, attended church 1-2 times per month, did laundry once per week, and cooked 3-4 times a week. Id. Additionally, the ALJ reasoned Plaintiff must have felt able to work since she received unemployment compensation and in order to do so, Plaintiff had to indicate she was able to work and was seeking employment. Id.

Plaintiff argues while the ALJ recognized the appropriate legal standards in assessing Plaintiff's credibility, she erred in failing to articulate explicit and adequate reasons for finding Plaintiff's testimony "not entirely credible." (Doc. 10, p. 17). Specifically, Plaintiff contends the ALJ did not explain which parts of Plaintiff's testimony she discredited. (Doc. 10, p. 21). Plaintiff argues it is unclear whether the ALJ

considered the factors outlined in SSR 96-7p as required because the ALJ failed to mention some material testimony that was relevant to those factors. (Doc. 10, p. 22). Further, Plaintiff argues the ALJ erred by equating Plaintiff's receipt of unemployment benefits with an admission that Plaintiff was "not disabled." (Doc. 10, p. 23).

Defendant argues there is substantial evidence to support the ALJ's credibility finding because there were several glaring inconsistencies in Plaintiff's testimony. (Doc. 11, p. 8). First, Defendant points to Plaintiff's alleged inadequate attempt to explain away purported drug-seeking behavior. Id. Specifically, Defendant argues the fact that Plaintiff found a pocketbook with a lot of old prescriptions does not explain how she managed to get the old prescriptions filled. Further, Defendant argues the fact that Plaintiff stated she did not take the old prescriptions all at once does not explain the excessive opiates and cocaine revealed in her blood work. Id. Defendant argues evidence of alleged drug-seeking behavior casts doubt on Plaintiff's complaints that led her doctor to increase her medications. (Doc. 11, p. 10). With regard to Plaintiff's alleged drug-seeking behavior, Defendant also highlights the fact that Plaintiff's treating physician discharged her six months after he noted she was unable to work due to her impairments and Defendant suggests it was because Plaintiff broke the doctor's trust. (Doc. 11, p. 9).

Second, Defendant points out that in regard to her termination of employment, Plaintiff testified she worked *full-time* as a baby-sitter in the summer, but then stated she was not able to work *part-time* as a baby-sitter during the school year due to her physical condition. (Doc. 11, p. 8). Third, Defendant also pointed out inconsistencies

regarding the reason Plaintiff left her employment with Host. According to Plaintiff, she

was really fired because she was having a lot of medical problems that were affecting

her work attendance. (Tr. 38). However, Plaintiff claimed Host made up a reason to fire

her, something to do with bad customer relations, which Host later contested because it

did not want to pay her unemployment. (Tr. 37). In this regard, Defendant contends the

ALJ correctly determined the employer could not have had any such motivation

because an inability to work would not negate the employer's obligation to pay

unemployment insurance. Id. Additionally, Defendant contends Plaintiff was not

required to apply for benefits to which she was not entitled, therefore, the fact that

Plaintiff applied for unemployment benefits suggests she believed she was able to work.

(Doc. 11, p. 9).

The Court must determine whether the reasons the ALJ articulated for

discrediting Plaintiff's testimony are adequate and supported by substantial evidence.

MacGregor, 786 F.2d at 1054. In discrediting a claimant's pain testimony, the ALJ is

required to consider the factors outlined in SSR 96-7p, however, there is no requirement

that the ALJ explicitly discuss each of the seven factors. See French v. Massanari, 152

F. Supp. 2d 1329, 1338, n.6 (M.D. Fla. 2001) (holding that "it is not reversible error that

the administrative law judge did not expressly mention the side effects of [the plaintiff's]

medications in his credibility determination"); Bechtold v. Massanari, 152 F. Supp. 2d

1340, 1349, n.9 (M.D. Fla. 2001), aff'd, 31 Fed. Appx. 202 (11th Cir. 2001)("In the

Eleventh Circuit, there is no requirement that all seven of these factors be discussed

explicitly."). Nevertheless, here, the Court finds the ALJ only provided two reasons for

discrediting Plaintiff's testimony and those reasons are inadequate and unsupported by substantial evidence.

In this case, the ALJ determined Plaintiff's testimony was not entirely credible because 1) *nothing* in the evidence supported the extent of her complaints and 2) Plaintiff received unemployment compensation subsequent to her alleged date of disability. The Court finds the ALJ's first reason was a general statement which is not enough to support her rejection of Plaintiff's pain testimony. See Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); See also, Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)(holding general statements are insufficient to support the ALJ's rejection of a claimants complaints). While the ALJ's articulation of her reasons for discrediting Plaintiff's testimony need not refer in detail to the specific statements Plaintiff made, the ALJ's reason cannot simply be a broad rejection that does not allow the undersigned to conclude the ALJ considered Plaintiff's overall medical condition. See Barclay v. Comm'r of Soc. Sec. Admin., 274 Fed. Appx. 738, 740 (11th Cir. 2008). Without more of an explanation, the Court finds the ALJ's broad statement that *"nothing* in the evidence" supports Plaintiff's complaints is an inadequate articulation of her reason for discrediting Plaintiff's testimony.

With respect to the ALJ's second reason, as Plaintiff notes, unemployment benefits are paid to individuals who work on a part-time basis. (Doc. 10, p. 23). It follows therefore, that one does not have to be unable to work entirely in order to receive unemployment compensation. As such, the mere fact that Plaintiff applied for and received unemployment compensation after leaving her job at Host does not equate to Plaintiff being able to perform substantial gainful activity. In other words,

Plaintiff's receipt of unemployment benefits is not equivalent to Plaintiff admitting she is not disabled. Accordingly, the Court finds the ALJ reasons for discrediting Plaintiff's testimony were unsupported by substantial evidence.

Finally, Defendant highlights various inconsistencies in Plaintiff's testimony which the Court finds compelling. However, the ALJ's decision does not indicate the ALJ considered any of these inconsistencies in evaluating Plaintiff's credibility. This Court's review is limited to determining whether the ALJ provided sufficient reasons, supported by substantial evidence, for discrediting Plaintiff's testimony and must not conduct its own analysis of Plaintiff's credibility.

## V.    CONCLUSION

Accordingly, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). The Commissioner shall conduct a <u>de novo</u> hearing and properly address: 1) Dr. Nabizadeh's opinion, 2) Plaintiff's testimony and credibility, and 3) conduct any other proceedings deemed necessary.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.

The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this __16th__ day of

March, 2009.

_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record